# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RAHEEM WILCOX,

      Petitioner,      Civil Action No. 13-3524 (JBS)

      v.

CHARLES E. WARREN, JR., et al.,  **OPINION**

      Respondents.

**APPEARANCES:**

    RAHEEM WILCOX, 540816C
    East Jersey State Prison
    Lock Bag R
    Rahway, New Jersey 07065
      *Petitioner Pro Se*

    KIMBERLY L. DONNELLY, ESQ.
    UNION COUNTY PROSECUTOR
    32 Rahway Avenue
    Elizabeth, New Jersey 07202
      *Attorneys for Respondents*

**SIMANDLE, Chief Judge**[1]

    Raheem Wilcox filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment of conviction filed in the Superior Court of New Jersey, Union County, on July 5, 2002, after a jury found him guilty of the first-degree murder of Ernestine Williams and other charges.  The State filed

---

[1] This case was reassigned to the undersigned following the death of the Hon. Dickinson R. Debevoise in August, 2015.

an Answer with the record.  Wilcox filed a motion to amend the Petition to include three claims of ineffective assistance of post-conviction relief counsel and a motion to stay the Petition, as amended, until he exhausts those claims in the New Jersey courts.  After carefully reviewing the arguments of the parties and the state court record, this Court will deny the motions to amend and to stay, dismiss the Petition with prejudice, and deny a certificate of appealability.

## I.  BACKGROUND

A.  The Crimes

Raheem Wilcox challenges a judgment of conviction imposing a 40-year term of imprisonment with 30 years of parole ineligibility imposed by the Superior Court of New Jersey, Law Division, Union County, on July 5, 2002, after a jury found him guilty of the first-degree murder of Ernestine Williams on April 13, 2000, third-degree possession of a weapon for an unlawful purpose, and fourth-degree unlawful possession of a weapon. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state court factual findings are presumed correct unless rebutted by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  As Wilcox has not rebutted the factual findings of the Superior Court of New Jersey, Appellate Division, with

respect to the crime, the Court will rely on those findings. See State v. Wilcox, 2012 WL 3116701 (N.J. Super. Ct., App. Div., July 20, 2012); State v. Wilcox, Docket No. A-6787-01T4 sl. opinion (N.J. Super. Ct., App. Div., Oct. 10, 2003) (ECF No. 1-2 at 6-17.).

The Appellate Division found the that the evidence at trial showed that Wilcox and Ms. Williams both worked at Federal Express. On April 13, 2000, Wilcox brought three knives to work. He ended his shift early, waited for Ms. Williams, and they took the bus to the parking lot. They got into Williams' car. Wilcox took out a knife and after a struggle, he stabbed Ms. Williams in the back as she ran away.

Eyewitnesses described Wilcox's murder of Ms. Williams with a knife. One Federal Express employee named Denise Drayton testified that in the early morning hours of April 13, 2000, she saw a woman flee from a car in the parking lot and heard the woman shrieking for Drayton to call the police while a male chased her. She saw the man catch the woman and raise his hand which held something pointy and shiny. Drayton approached the woman who was lying on the ground and saw there was a butcher knife in the middle of her back. Suna Ricks, another Federal Express employee, testified that she heard a car horn blowing in

the parking lot and she saw the victim, whom she knew as "Tee," trying to get out of a vehicle; when Tee broke away, the man chased her.  Tee yelled, "Call the police," and she fell to the ground.

Wilcox spontaneously blurted out his crime moments after he murdered Williams.  Anthony Harley, a New Jersey Turnpike employee, testified that Wilcox approached Harley at about 3:00 a.m. and said he needed an ambulance because he had just stabbed his girlfriend.  When State Police Officer Patrick Doyle arrived, Doyle handcuffed Wilcox, who told Doyle that he had just stabbed his girlfriend.  Doyle asked where she was and, after calling for an ambulance and providing directions, Doyle read Wilcox his Miranda rights.  Later, Wilcox gave two statements describing the murder to Sergeant Kevin Foley of the Union County Prosecutor's Office.

B.   State Court Proceedings

After a grand jury indicted Wilcox for first-degree murder, third-degree possession of a weapon for an unlawful purpose, and fourth-degree unlawful possession of a weapon, Wilcox moved to suppress the admission of his statements.  The trial judge conducted a suppression hearing and then denied the motion. After a two week trial, the jury convicted Wilcox on all

charges.  On July 5, 2002, the trial judge sentenced him to 40 years in prison with 30 years of parole ineligibility.  Wilcox appealed.  On October 10, 2003, the Appellate Division affirmed. See State v. Wilcox, Docket No. A-6787-01T4 sl. opinion (N.J. Super. Ct., App. Div., Oct. 10, 2003) (ECF No. 1-2 at 6-17.)  On November 3, 2005, the New Jersey Supreme Court denied certification.  See State v. Wilcox, 185 N.J. 389 (2005) (table).

Wilcox filed his first petition for post-conviction relief in the trial court on April 17, 2006.  After hearing oral argument on 17 ineffective assistance of counsel grounds, on May 9, 2008, the trial judge rejected all but one claim; the judge ordered an evidentiary hearing on the claim that counsel was ineffective in failing to request a voir dire on alleged juror misconduct.  On June 26, 2009, the trial court conducted the evidentiary hearing.  The trial judge denied relief in an opinion and order filed on January 22, 2010.  Wilcox appealed. On July 20, 2012, the Appellate Division affirmed.  See State v. Wilcox, 2012 WL 3116701 (N.J. Super. Ct., App. Div., July 20, 2012).  On January 31, 2013, the New Jersey Supreme Court denied certification.  See State v. Wilcox, 213 N.J. 46 (2013) (table).

In the Answer, the State indicates that Wilcox filed a second petition for post-conviction relief, which the trial court denied on January 24, 2014, because the grounds could have been raised in the first post-conviction relief petition, the issues "regarding failure to remove or to request a voir dire of members of the jury was raised in petitioner's first post-conviction relief and rejected," and Wilcox did not "point to anything that might be contained in the jury selection transcripts that might support any post-conviction relief claim." (ECF No. 12-21 at 2.)  Wilcox filed a motion to reconsider the denial of his second post-conviction relief petition, which the trial court denied on March 12, 2014.  (ECF No. 12-21 at 11.)  According to the State, Wilcox filed a notice of appeal and a brief supporting that appeal in the Appellate Division.

C.  Procedural History of § 2254 Petition

On May 24, 2013, Wilcox signed and presumably handed to prison officials for mailing to the Clerk his § 2254 Petition (ECF No. 1.)  He also filed a motion for a stay.  By Order entered July 12, 2013, the Court notified Wilcox of his right to amend the Petition to include all available federal claims in accordance with Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).

6

(ECF No. 2.)  In response, Wilcox wrote a letter asking the
Court to rule on the Petition as filed and to rule on his motion
for a stay.  (ECF No. 3.)  In an Order and Opinion entered on
October 7, 2014, the Court denied the motion for a stay and
ordered the Government to file an answer and the record.

The Petition raises eight grounds:

Ground One:  THE STATE COURTS['] RULING THAT
PETITIONER WAS NOT DEPRIVED OF HIS SIXTH AND
FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHTS TO
EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS BY HIS
TRIAL ATTORNEY['S]FAILURE TO USE THE MENTAL HEALTH
EXPERT REPORTS AT TRIAL OR SENTENCING IN SUPPORT OF A
DIMINISH[ED] CAPACITY DEFENSE AND ESPECIALLY IN LIGHT
OF THE TRIAL COURT['S] IMPOSITION OF PENALTY AT THE
LOWER END WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL
LAW.

Ground Two:  THE STATE COURTS['] RULING THAT
PETITIONER WAS NOT DEPRIVED OF HIS SIXTH AND
FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHTS TO
EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS RIGHT
TO FUNDAMENTAL FAIRNESS BY APPELLATE COUNSEL'S FAILURE
TO RAISE ON APPEAL THAT THE TRIAL COURT COMMITTED
REVERSIBLE ERROR BY PERMITTING DETECTIVE FOLEY TO
TESTIFY TO INADMISSIBLE HEARSAY MATERIAL THAT DENIED
PETITIONER'S SIXTH AMENDMENT CONFRONTATION RIGHT BASED
ON A NEW RULE OF CONSTITUTIONAL LAW AND PROVIDED CAUSE
FOR PROCEDURAL DEFAULT CONTRARY TO CLEARLY ESTABLISHED
FEDERAL LAW.

Ground Three:  THE STATE COURTS['] RULING THAT
PETITIONER WAS NOT DEPRIVED OF HIS SIXTH AMENDMENT
RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY PCR
COUNSEL'S FAILURE TO ADEQUATELY CROSS-EXAMINE
PETITIONER'S TRIAL ATTORNEY DURING THE EVIDENTIARY
HEARING HELD ON A TWOFOLD INEFFECTIVE A[SSISTANCE AND]
JURY MISCONDUCT CLAIM TO ASCERTAIN THE IDENTITY OF
PETITIONER'S FAMILY MEMBER WHO ADVISED HIM OF A

7

JUROR'S UNFAVORABLE COMMUNICATION DURING TRIAL WITH A
FAMILY MEMBER OF THE VICTIM BESIDES THE ALLEGED
PETITIONER HE WAS CONSTITUTIONALLY INEFFECTIVE FOR
FAILING TO TIMELY ADVISE THE COURT [] TO TAKE ACTION
AGAINST BY HIS OWN ADMISSION, AND TO CALL OTHER
POTENTIAL WITNESSES WAS BASED ON AN UNREASONABLE
DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE
PRESENTED IN THAT PROCEEDING AND ESTABLISHED CAUSE TO
EXCUSE A PROCEDURAL DEFAULT.

Ground Four:  THE STATE COURTS['] RULING AFFIRMING THE
DENIAL OF PETITIONER'S MOTION TO SUPPRESS ANY OF HIS
STATEMENTS DEPRIVED HIM OF HIS FIFTH AND FOURTEENTH
AMENDMENT RIGHTS AGAINST SELF INCRIMINATION AND DUE
PROCESS OF LAW CONTRARY TO CLEARLY ESTABLISHED FEDERAL
LAW.

Ground Five:  THE STATE COURTS['] RULING TO NOT PERMIT
PETITIONER TO CALL BACK A JUROR OR TO VOIR DIRE THE
JURY BASED ON ITS DETERMINATION THAT PETITIONER WAS
NOT DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL AND A FAIR AN[D] IMPARTIAL JURY
DUE TO TRIAL COUNSEL'S FAILURE TO TIMELY ADVISE THE
COURT OF SAID JUROR WHO APPEARED TO HAVE MADE AN
UNFAVORABLE COMMUNICATION WITH A VICTIM'S FAMILY
MEMBER DURING PETITIONER'S TRIAL WAS CONTRARY TO
CLEARLY ESTABLISHED FEDERAL LAW.

Ground Six:  THE STATE COURTS['] RULING DENYING
PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARING TO
DETERMINE WHETHER HIS TRIAL ATTORNEY DEPRIVED HIM OF
HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL AND DUE PROCESS OF LAW FOR
FAILING TO REMOVE A BIASED VENIREMAN WAS CONTRARY TO
CLEARLY ESTABLISHED FEDERAL LAW RESULTING ALSO IN THE
DENIAL OF PETITIONER'S SIXTH AMENDMENT RIGHT TO A FAIR
TRIAL AND IMPARTIAL JURY.

Ground Seven:  THE STATE COURTS['] RULING AFFIRMING
THE DENIAL OF PETITIONER'S EXCESSIVE SENTENCE FOR HIS
MURDER CONVICTION VIOLATED HIS EIGHTH AMENDMENT
CONSTITUTIONAL RIGHT AGAINST CRUEL AND UNUSUAL
PUNISHMENT RESULTING IN AN UNREASONABLE APPLICATION OF
CLEARLY ESTABLISHED FEDERAL LAW.

> Ground Eight:  THE STATE COURTS['] RULING THAT
> PETITIONER WAS NOT DEPRIVED OF HIS SIXTH AMENDMENT
> RIGHT TO EFFECTIVE ASSISTANCE OF PCR COUNSEL FOR
> FAILING TO USE THE MENTAL HEALTH EXPERT REPORTS
> ALTHOUGH RELYING ON THE INEFFECTIVE ASSISTANCE OF
> TRIAL COUNSEL ARGUMENT FOR FAILING TO PRESENT A
> DIMINISH[ED] CAPACITY DEFENSE WITH RESPECT TO
> PETITIONER BEING UNABLE TO FORM THE INTENT TO COMMIT
> MURDER RESULTED IN A DECISION THAT WAS BASED ON AN
> UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF
> THE EVIDENCE PRESENTED IN THE STATE COURT AND
> ESTABLISH[ES] CAUSE TO EXCUSE A PROCEDURAL DEFAULT.

(ECF No. 1-2 at 2-5.)

The State filed an Answer arguing that Wilcox is not entitled to habeas relief and Wilcox filed motions to amend and to stay the Petition.

## II.  MOTIONS TO AMEND AND STAY PETITION

After the Answer was filed, Wilcox filed two motions:  a motion to amend the § 2254 Petition to add three claims and a motion to stay the Petition while he exhausts those claims before the New Jersey courts.  Each of the three grounds Wilcox seeks to exhaust and to add to his Petition asserts that post-conviction relief counsel was ineffective.[2]  The problem with

---

[2] In Ground A, he asserts that "PCR COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE TRIAL AND APPELLATE COUNSEL'S INEFFECTIVENESS[,] FOR FAILING TO OBJECT TO A POTENTIALLY BIASED JUROR . . . AND FOR FAILING TO REQUEST A VOIR DIRE[.]"  (ECF No. 17 at 7.)  In Ground B, he claims that "PCR COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE TRIAL COUNSEL'S FAILURE TO

amending the Petition to exhaust these ineffective assistance of post-conviction relief counsel grounds is that they are not cognizable under § 2254.  Section 2254(i) provides that "[t]he ineffectiveness or incompetence of counsel during . . . State collateral post-conviction proceedings shall not be a ground for relief under section 2254."  28 U.S.C. § 2254(i).  See Martel v. Clair, 132 S. Ct. 1276, 1287 n.3 (2012) ("[M]ost naturally read, § 2254(i) prohibits a court from granting substantive habeas relief on the basis of a lawyer's ineffectiveness in post-conviction proceedings."); Stevens v. Epps, 618 F.3d 489, 502 (6th Cir. 2010) ("Ineffectiveness of post-conviction counsel cannot be the grounds for federal habeas relief").

In addition, shortly after he filed his § 2254 Petition, the Court issued an Order giving Wilcox an opportunity to amend the Petition to include all available grounds in accordance with Mason v. Meyers, supra.  (ECF No. 2.)  In response, Wilcox declined to add grounds, and he asked the Court to rule on the Petition as filed.  (ECF No. 3.)  The filing of Wilcox's § 2254

_____

REQUEST A VOIR DIRE OF TWO SLEEPING JURORS," and in Ground C he asserts that "PCR COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE PETITIONER'S PRO SE CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO EXERCISE A PEREMPTORY CHALLENGE[.]" Id. at 7-8.

Petition on May 24, 2013, did not toll the 365-day statute of limitations under 28 U.S.C. § 2244(d).  See Duncan v. Walker, 533 U.S. 167 (2001) (holding that a properly filed § 2254 petition does not toll the statute of limitations under § 2244(d)).  Accordingly, Wilcox's new claims, which were set forth in his motion dated March 28, 2015, would in any event be time barred.  See 28 U.S.C. § 2244(d)(1) (imposing a one-year statute of limitations under § 2254, which generally begins to run from the date on which the judgment of conviction became final by the conclusion of direct review or the expiration of the time for seeking such review).  For all of these reasons, the Court will deny the motion to amend the Petition to add new claims and the motion to stay the amended petition while Wilcox exhausts those claims.

## II.  STANDARD OF REVIEW FOR RELIEF UNDER § 2254

Section 2254 of title 28 of the United States Code sets limits on the power of a federal court to grant a habeas petition to a state prisoner.  See Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Where a state court

11

adjudicated petitioner's federal claim on the merits,[3] as in this case, a court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States', or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Parker v. Matthews, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, 135 S.Ct. 1372, 1376 (2015). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. See Pinholster, 131 S.Ct. at 1398.

---

[3] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

A court begins the analysis under § 2254(d)(1) by
determining the relevant law clearly established by the Supreme
Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).
"[C]learly established law for purposes of § 2254(d)(1) includes
only the holdings, as opposed to the dicta, of t[he Supreme
Court's] decisions," as of the time of the relevant state-court
decision.  Woods, 135 S.Ct. at 1376 (quoting White v. Woodall,
134 S.Ct. 1697, 1702 (2014), and Williams v. Taylor, 529 U.S.
362, 412 (2000)).  A decision is "contrary to" a Supreme Court
holding within 28 U.S.C. § 2254(d)(1) if the state court
"contradicts the governing law set forth in [the Supreme
Court's] cases" or if it "confronts a set of facts that are
materially indistinguishable from a decision of th[e Supreme]
Court and nevertheless arrives at a [different] result."
Williams, 529 U.S. at 405-06.  Under the "'unreasonable
application' clause of § 2254(d)(1), a federal habeas court may
grant the writ if the state court identifies the correct
governing legal principle from th[e Supreme] Court's decisions
but unreasonably applies that principle to the facts of the
prisoner's case."  Id., 529 U.S. at 413.

Where a petitioner seeks habeas relief, pursuant to §
2254(d)(2), on the basis of an erroneous factual determination

13

of the state court, two provisions of the AEDPA necessarily apply.  First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see Miller-El v. Dretke, 545 U.S. 231, 240 (2005).  Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

## III. DISCUSSION

A.   Self-Incrimination

In Ground Four of the § 2254 Petition, Wilson challenges the admission of his confessions to Trooper Doyle and Detective Foley.  Wilcox claims that the denial of his motion to suppress his confessions violated his Fifth and Fourteenth Amendment rights not to incriminate himself.  In the New Jersey courts, Wilcox challenged the admission of his pre-Miranda statements to State Trooper Doyle on the ground that he was in custody and Doyle had not informed him of his rights under Miranda.  He challenged the admission of his post-Miranda statements on the

14

grounds that he invoked his right to remain silent and he did
not voluntarily waive his Miranda rights.  The trial court and
the Appellate Division rejected each argument.

     (1) Pre-Miranda Confession

     After conducting a suppression hearing, the trial court
allowed the admission of Wilcox's statements to Doyle and Foley.
Wilcox argued on direct appeal that his first confession to
Trooper Doyle violated Miranda v. Arizona, 384 U.S. 436 (1966),
because Wilcox was in custody when he gave the confession and
Doyle had not administered the Miranda warnings.  The Appellate
Division found the following facts regarding the pre-Miranda
statements to Doyle:

> New Jersey Turnpike Authority employee Anthony Harley
> testified that [Wilcox] approached him at
> approximately 3:00 a.m. on April 13, 2000, and stated
> that he needed an ambulance because he "just stabbed
> [my] girlfriend."  State Police Officer Patrick Doyle
> arrived at the scene and handcuffed defendant.
> Defendant told the trooper that he had just stabbed
> his girlfriend.  The trooper asked where the victim
> was because she may need medical attention.  After the
> trooper called with directions to send an ambulance to
> the victim, Trooper Doyle read defendant his Miranda
> rights.

(ECF No. 1-2 at 8.)

     The Appellate Division held that Wilcox's statement that he
just stabbed his girlfriend was admissible under the public
safety exception to the suppression remedy imposed by Miranda:

15

> The trooper was responding to a call from the turnpike official who had reported a stabbing.  When he arrived at the scene and even before defendant was placed into custody, defendant volunteered the fact that he had stabbed his girlfriend.  At that point the trooper's focus was on whether defendant was armed and the whereabouts and condition of the victim.  He made no effort to induce defendant to disclose details of the crime.  See New York v. Quarles, 467 U.S. 649, 653 . . . .  Indeed, according to the record, Trooper Doyle attempted to stop defendant from making admissions prior to giving him Miranda warnings.

(ECF No. 1-2 at 10.)

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  The Fourteenth Amendment incorporates the Fifth Amendment privilege against self-incrimination.  See Malloy v. Hogan, 378 U.S. 1, 8 (1964).  In Miranda, the Court held that "without proper safeguards the process of in-custody interrogation . . . contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. at 467.  When police ask questions of a suspect in custody without administering the required warnings, Miranda dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the State's case in chief.  See Oregon v. Elstad, 470 U.S. 298, 317 (1985).  "To safeguard the uncounseled individual's Fifth Amendment privilege

16

against self-incrimination . . , suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation." Thompson v. Keohane, 516 U.S. 99, 107 (1995); see also Miranda, 384 U.S. at 479.

In New York v. Quarles, Quarles was charged with criminal possession of a weapon.  Officers Kraft and Scarring were on road patrol in Queens, N.Y., when a young woman approached their car and said that she had just been raped by a black male carrying a gun who was wearing a black jacket with the name "Big Ben" printed in yellow letters on the back and who had just entered an A & P supermarket.  The officers drove the woman to the supermarket, and Officer Kraft entered the store and spotted a man matching the description given by the woman.  The man ran; Officer Kraft pursued him with a drawn gun and ordered him to stop and put his hands over his head.  Although more than three other officers had arrived on the scene by that time, Officer Kraft frisked the man and discovered that he was wearing an empty shoulder holster.  After handcuffing him, Officer Kraft asked him where the gun was and Quarles nodded in the direction

of some empty cartons and said, "the gun is over there."
Quarles, 467 U.S. at 652.  Officer Kraft retrieved a loaded
revolver from one of the cartons, formally placed Quarles under
arrest, and read him his Miranda rights.  After Quarles
indicated he would answer questions without an attorney, Kraft
asked him if he owned the gun and where he bought it, and
Quarles answered that he owned it and he had bought it in Miami.

The Supreme Court reversed the state courts' suppression of
Quarles' statements, holding that a person's statements, albeit
not preceded by Miranda warnings, are admissible if the totality
of the circumstances shows that the officer's questions "relate
to an objectively reasonable need to protect the police or the
public from any immediate danger."  Quarles, 467 U.S. at 659
n.8.

In this case, the Appellate Division found on direct appeal
that Trooper Doyle arrived at the turnpike toll in Newark after
Wilcox had told the turnpike employee that he just stabbed his
girlfriend.  Trooper Doyle handcuffed Wilcox who told Doyle that
he had just stabbed his girlfriend; Doyle asked where the victim
was because she may need medical attention.  The Court is
required to presume the correctness of these factual findings.
See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an

18

application for a writ of habeas corpus by a person in custody
pursuant to the judgment of a State court, a determination of a
factual issue made by a State court shall be presumed to be
correct.  The applicant shall have the burden of rebutting the
presumption of correctness by clear and convincing evidence.").
Wilcox has not rebutted the presumption by clear and convincing
evidence, and he has not shown that the Appellate Division's
findings were unreasonable in light of the evidence presented at
the suppression hearing.[4]  Thus, he has not satisfied the
requirements of 28 U.S.C. § 2254(d)(2).

Wilcox is also not entitled to habeas relief under §
2254(d)(1).  Under <u>Quarles</u>, the public safety exception to
<u>Miranda</u> applies so long as the questioning "relate[s] to an
objectively reasonable need to protect the police or the public
from any immediate danger."  <u>Quarles</u>, 467 U.S. at 659 n.8.  The
facts found by the Appellate Division in this case are

---

[4] <u>See also</u> <u>Miller-El v. Dretke</u>, 545 U.S. at 240 (holding that a
district court must " presume the [state] court' s factual
findings to be sound unless [petitioner] rebuts the '
presumption of correctness by clear and convincing evidence.'");
<u>Rountree v. Balicki</u>, 640 F.3d 530, 541-42 (3d Cir. 2011) (habeas
court is " bound to presume that the state court' s factual
findings are correct, with the burden on the petitioner to rebut
those findings by clear and convincing evidence.") (quoting
<u>Simmons v. Beard</u>, 590 F.3d 223, 231 (3d Cir. 2009)).

consistent with application of the public safety exception set
forth in Quarles, i.e., Trooper Doyle questioned Wilcox because
there was an objectively reasonable basis for Doyle to conclude
that the victim may need emergency medical care, since Doyle
arrived in response to Hartley's report of a stabbing of a woman
by Wilcox.  Wilcox has not shown that the Appellate Division's
determination that Wilcox's statement to Trooper Doyle was
admissible under the public safety exception was contrary to, or
an unreasonable application of, Quarles or other Supreme Court
holdings.  See Allen v. Roe, 305 F.3d 1046 (9th Cir. 2002)
(holding that, although the area where the gun was found was
isolated, the state courts' application of the public safety
exception did not warrant habeas relief).  Wilcox is, therefore,
not entitled to habeas relief on this portion of Ground Four.

(2) Claim of Invocation of Right to Remain Silent

Wilcox also challenged the admission of the statements he
gave to Trooper Doyle and later to Detective Foley after he
received the Miranda warnings, arguing that he had invoked his
right to remain silent.  The Appellate Division found that
Wilcox did not invoke his right to remain silent or ask for an
attorney after receiving the Miranda warnings:

> [W]e agree with the trial court that [Wilcox] did not,
> ambiguously or otherwise, invoke his right to remain

20

silent.  After the Miranda warnings were given he
agreed freely to be interviewed by Sergeant Foley.  He
made no request or even a fleeting reference to
secession of the questioning, nor did he express a
desire to have counsel present.  Indeed, being fully
cognizant of his rights, [Wilcox] initiated discussion
about the details of the criminal episode on several
occasions during the interviews, even without being
pressed by Foley.

It is true that at one point, [Wilcox] stated, "I
don't like to talk about it, I know it's wrong."
However, we agree with the trial court that,
considered in context, these remarks were nothing more
than an expression of remorse.  For example, after the
remark, [Wilcox] added "[i]t's just hurting me by
talking about it."  As the trial court observed,
[Wilcox] apparently still had strong feelings about
the victim, and an acknowledgment that he had caused
her injury or even her death evoked pain and remorse.
As such, they cannot be construed as even an equivocal
invocation of his Miranda rights.

(ECF No. 1-2 at 11-12.)

Again, this Court must presume the correctness of the above
factual findings, as Wilcox has not rebutted them with clear and
convincing evidence.  Those findings establish that at no point
after he received the Miranda warnings did Wilcox say that he
wanted to remain silent, that he did not want to talk with law
enforcement officials, or that he wanted an attorney.

In Berghuis v. Thompkins, 560 U.S. 370 (2010), the Supreme
Court reversed the Sixth Circuit's grant of habeas relief under
§ 2254 where the circuit had found that Thompkins' incriminating
statement had been elicited in violation of Miranda because,

after being given the Miranda warnings, Thompkins essentially
sat in an interrogation room for almost three hours without
speaking.  When the police finally asked him if he believed in
God, he responded "Yes."  The officer asked if he prayed to God,
and he again responded "Yes," and if he prayed to God to forgive
him for shooting that boy down and he answered "Yes."  Id.  at
375-76.  The Supreme Court held that habeas relief was improper
because the state court's decision to admit the statements was
not contrary to, or an unreasonable application of, Supreme
Court holdings as "[t]he Court has not yet stated whether an
invocation of the right to remain silent can be ambiguous or
equivocal."  Id. at 381.

        In this case, where the evidence in the record does not
show that Wilcox unambiguously invoked his right to remain
silent, the Appellate Division's determination that his post-
Miranda statements were admissible is not contrary to, or an
unreasonable application of, Miranda or other Supreme Court
holdings.  See Berghuis, 560 U.S. at 381-82; see also Davis v.
United States, 512 U.S. 452, 461-62 (1994) ("If the suspect's
statement is not an unambiguous or unequivocal request for
counsel, the officers have no obligation to stop questioning
him.")

(3) Waiver of <u>Miranda</u> Rights

Wilcox also argued on direct appeal that his post-Mirandized statements were not admissible because he had not voluntarily waived his <u>Miranda</u> rights.  In <u>Berghuis</u>, the Supreme Court outlined its precedent on the waiver of <u>Miranda</u> rights:

> [T]he accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused in fact knowingly and voluntarily waived [<u>Miranda</u>] rights when making the statement.  The waiver inquiry has two distinct dimensions:  waiver must be voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

<u>Berghuis</u>, 560 U.S. at 382-83 (citations and internal quotation marks omitted).

The <u>Berghuis</u> Court emphasized that the State may establish waiver by a preponderance of the evidence, <u>Berghuis</u>, 560 U.S. at 384, and that "<u>Miranda</u> rights can . . . be waived through means less formal than a typical waiver on the record in a courtroom." <u>Id.</u> at 385.  The Court further explained that, "[a]s a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford."  <u>Id.</u>

23

In this case, the Appellate Division rejected Wilcox's challenge to his waiver substantially for the reasons expressed by the trial judge, adding that "[n]othing in the record supports a conclusion that defendant's statements were not the product of an essentially free and unconstrained choice." (ECF No. 1-2 at 12) (citations and internal quotation marks omitted). The record shows that, after the suppression hearing, the trial judge found that Wilcox understood the Miranda warnings and that he decided to waive them. Specifically, as to Wilcox's post-Miranda statements to Trooper Doyle, the trial judge found that while Trooper Doyle was reading the Miranda warnings, Wilcox

> was alert, he was nodding that he understood those rights as they were given and – and was told that he could – he can waive those, you know, at any time he wanted, he could withdraw his waiver and assert those rights, and then – and then the Trooper asked okay? And he got an ah-hum, which under the circumstances was an affirmative – I interpret to be an affirmative yes. He then proceeded, once again, to totally be cooperative and volunteer information.

(ECF No. 12-30 at 28-29.)

With respect to the confessions Wilcox gave to Detective Foley, the trial judge found that "Mr. Wilcox was given his Miranda warnings over and over and over again, both orally and written, and that he understood his rights and that he knowingly waived his rights." (ECF No. 12-30 at 29-30.)

24

Again, the Court must presume the state courts' factual findings that Wilcox comprehended his <u>Miranda</u> rights and that he voluntarily chose to give statements to Doyle and Foley.  <u>See</u> 28 U.S.C. § 2254(e)(1).  Wilcox has not rebutted these findings by clear and convincing evidence, <u>id.</u>, or shown that they were unreasonable in light of the evidence in the record.  <u>See</u> 28 U.S.C. § 2254(d)(2).

In addition, the New Jersey courts' determination that the admission of Wilcox's statements did not violate his <u>Miranda</u> rights because the statements were made freely with an understanding of his rights was consistent with Supreme Court precedent.  "Where the prosecution shows that a <u>Miranda</u> warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent."  <u>Berghuis</u>, 560 U.S. at 384.  Based on the foregoing, Wilcox has not shown that the New Jersey courts' adjudication of his waiver challenge was contrary to, or an unreasonable application of, U.S. Supreme Court holdings. <u>See</u> 28 U.S.C. § 2254(d)(1), (d)(2).

B.   <u>Ineffective Assistance of Post-Conviction Relief Counsel</u>

In Grounds Three and Eight of the § 2254 Petition, Wilcox asserts that post-conviction relief counsel was constitutionally

25

ineffective.  As explained above, a ground challenging the ineffectiveness or incompetence of counsel during state post-conviction proceedings is not cognizable under § 2254.  See 28 U.S.C. § 2254(i) and supra at pp. 8-9.  Wilcox is, therefore, not entitled to habeas relief on Grounds Three and Eight.

C.   Ineffective Assistance of Trial and Appellate Counsel

In Grounds One, Five, and Six of his § 2254 Petition, Wilcox asserts that trial counsel was deficient in failing to use previously obtained mental health expert reports at his trial and sentencing, failing to advise the trial court that a juror appeared to have made an unfavorable communication with a family member of the victim, and failing to seek to remove a biased venire person.  In Ground Two, Wilcox asserts that counsel on direct appeal was deficient in failing to argue that the trial court erred by allowing Detective Foley to testify to (unidentified) hearsay that violated the Confrontation Clause.

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, the defendant must "show that

26

... 

counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]" Hinton v. Alabama, 134 S.Ct. 1081, 1083 (2014) (per curiam).  To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission." Id., 134 S.Ct. at 1083.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 1089 (quoting Strickland, 466 U.S. at 695).

The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective

assistance of counsel, id. at 396.  The ineffective assistance
of counsel standard of Strickland applies to a claim that
appellate counsel was ineffective.  See Smith v. Robbins, 528
U.S. 259, 285 (2000); United States v. Cross, 308 F.3d 308, 315
(3d Cir. 2002).  However, "it is a well established principle
that counsel decides which issues to pursue on appeal," Sistrunk
v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996), and appellate
counsel is not constitutionally required to raise every
nonfrivolous claim requested by the defendant.  See Jones v.
Barnes, 463 U.S. 745, 751 (1983); see also Smith v. Robbins, 528
U.S. 259, 288 (2000).

(1) Failure to Use Mental Health Reports

In Ground One of the § 2254 Petition, Wilcox claims that
trial counsel was deficient in failing to "use the mental health
expert reports at trial or sentencing in support of a
diminish[ed] capacity defense and especially in light of the
trial court[']s imposition of penalty at the lower end[.]"  (ECF
No. 1-2 at 2.)  Wilcox raised this ground on post-conviction
relief and included in his appendix several mental health
evaluations, arguing that, if presented at trial, the
evaluations would have established a diminished capacity defense
or reduced his sentence.

28

As to use of the reports to establish a diminished capacity defense, the Appellate Division agreed with the trial judge "that trial counsel's decision to pursue a passion/provocation defense as opposed to diminished capacity, was one of trial strategy." Wilcox, 2012 WL 3116701 at *3.  The Appellate Division noted that

> the State asserted at oral argument that it had a report as to defendant's mental status, prepared before trial, in which the expert concluded that [Wilcox] had the mental capacity to engage in purposeful and knowing conduct.  By not introducing his own reports at trial [or] sentencing . . , defendant was able to argue diminished capacity without running the risk of the State offering evidence to the contrary.

Wilcox, 2012 WL 3116701 at *3.

The Appellate Division noted that trial counsel had argued in summation that Wilcox snapped at the time of the crime and that the evidence showed at worst that he had committed aggravated manslaughter.  The court found that, "without opening the door to the admission of the State's proofs, [Wilcox] nonetheless argued diminished capacity to the jury, without objection, once the judge refused to give the jury a passion/provocation instruction." Id. at *4.

The Appellate Division further found that counsel's decision not to use the reports at sentencing was not deficient.

29

Id.  "Even in the absence of reports, trial counsel was so
effective in his sentencing presentation that despite the
presence of aggravating factor one, '[t]he nature and
circumstances of the offense,' N.J.S.A. 2C:44-1(a)(1), [Wilcox]
was sentenced in the lower end of the range."  Id.

As explained above, the Appellate Division found that trial
counsel made a strategic decision not to use the mental health
reports.  The habeas petitioner "bears the burden of proving
that counsel's representation was unreasonable under prevailing
professional norms and that the challenged action was not sound
strategy."  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986)
(citing Strickland, 466 U.S. at 688-689).  As Strickland
explained, to establish constitutionally deficient performance,
"the defendant must overcome the presumption that, under the
circumstances, the challenged action might be considered sound
trial strategy."  Strickland, 466 U.S. at 689 (citation and
internal quotation marks omitted).  The Appellate Division's
determination that counsel was not deficient in failing to use
the previously obtained mental health reports at trial or
sentencing is not contrary to, or an unreasonable application of
Strickland and its progeny.  See United States v. Leggett, 162
F.3d 237, 247 (3d Cir. 1998) ("[T]here is no constitutional

30

right to be represented by a lawyer who agrees with the
defendant's trial strategy.  Mere disagreement between defendant
and counsel with regard to strategic decisions does not create a
situation severe enough to compel a district court to
investigate whether the defendant's rights are being
impinged[.]").  Accordingly, Wilcox is not entitled to habeas
relief on this claim.

    (2) Failure to Advise the Court of Juror's Communication

    In Ground Five of his § 2254 Petition, Wilcox claims that
counsel was ineffective in failing to timely advise the trial
court that a juror appeared to have made an unfavorable
communication with a family member of the victim.  (ECF no. 1-2
at 4.)  Wilcox raised this ground in his post-conviction relief
petition.  After conducting an evidentiary hearing and
considering the testimony of Wilcox, Tammy Smart (the ex-wife of
Wilcox's cousin), and Wilcox's trial attorney, the trial court
decided not to recall the juror because Wilcox failed to show
that "a specific, non-speculative impropriety [] occurred" or
that he "may have been harmed by jury misconduct."  (ECF No. 1-2
at 25.)

    The Appellate Division noted that Wilcox testified that "he
saw a particular juror making flirtatious eye contact on three

separate occasions with a woman seated behind the prosecutor," and that "his attorney told him that he saw that same juror make an inappropriate gesture to [the victim's] family."  Wilcox, 2012 WL 3116701 at *1.  Wilcox's trial attorney testified that after the jury returned to the court room to render its verdict, Wilcox told him that he thought that a juror had made some eye contact with the victim's side, but Wilcox did not report any other observations regarding the juror.  Tammy Smart testified that while she was in the courtroom after deliberations and immediately before the jury announced the verdict, she saw a juror nodding his head and patting his chest while making eye contact with the victim's family.  The Appellate Division ruled that, "[i]n light of the judge's determination that trial counsel's testimony was credible, and was corroborated by Smart, and his conclusion that [Wilcox] was not credible, the judge certainly had no record upon which to require voir dire of the juror.  Defendant made no showing at all, much less a 'strong showing' of such a need."  Id. at *4 (citations omitted).

   This Court must presume the correctness of the finding that the juror made a gesture to the victim's family after deliberations had concluded and after the jury returned to the courtroom, but immediately before the jury announced the

verdict.  Under the facts found by the New Jersey courts,
Wilcox's trial attorney was not constitutionally deficient in
failing to seek to voir dire the jury because the gesture
occurred *after* deliberations had concluded.  See Ross v.
District Attorney of the County of Allegheny, 672 F.3d 198, 211
n.9 (3d Cir. 2012)) ("[C]ounsel cannot be deemed ineffective for
failing to raise a meritless claim.") (quoting Werts v. Vaughn,
228 F.3d 178, 202 (3d Cir. 2000)).  No impropriety occurs when a
juror, by body language, conveys the notion that the jury is
about to announce a finding of guilt, and the state courts'
conclusion does not violate any established precedent.

(3) Failure to Remove Biased Venire Person

In Ground Six of his § 2254 Petition, Wilcox asserts that
trial counsel was deficient in failing to remove a biased venire
person.  As factual support, he does not explain the nature of
the alleged bias; he simply refers to the brief filed on his
appeal from the denial of post-conviction relief.  In point five
of that brief, counsel indicates that in Wilcox's pro se
submission to the trial court, he had "alleged that his trial
attorney was constitutionally ineffective because he failed to
exercise a peremptory challenge on a venireman for bias." (ECF
No. 12-4 at 21.)  Without setting forth the factual basis for

the alleged bias, counsel continued, "[a]ssuming the defendant's facts are true," the trial court improperly rejected the claim without addressing the merits.  Id.  The Appellate Division affirmed the denial of relief on this ground because "[n]o facts are even asserted supporting this claim."  Wilcox, 2012 WL 3116701 at *4.

This Court agrees with the Appellate Division and finds that, in the absence of any factual showing, Wilcox has not established that the Appellate Division's rejection of this ground was based on an unreasonable determination of the facts in light of the evidence presented or was contrary to, or an unreasonable application of, Supreme Court holdings.  See 28 U.S.C. § 28 U.S.C. § 2254(d)(1) and (d)(2).

> (4) Failure to Argue on Direct Appeal That the Admission of Hearsay in Detective Foley's Testimony Violated the Confrontation Clause

In Ground Two of the § 2254 Petition, Wilcox asserts that appellate counsel was deficient in failing to argue on direct appeal "that the trial court committed reversible error by permitting Detective Foley to testify to inadmissible hearsay material that denied Petitioner's Sixth Amendment confrontation right[.]"  (ECF No. 1-2 at 2.)  As factual support, Wilcox does not describe the challenged testimony; he refers the Court to

his pro se letter briefs filed on appeal from the denial of
post-conviction relief.  Id.  The record shows that Wilcox
raised the identical heading as point two in his pro se
supplemental brief filed in the Appellate Division.  (ECF No.
12-8 at 11.)  He argued that "the Miranda card used by Detective
Foley to elicit oral statements that resulted to written
statements belonged to Officer Raul Morales," and that
"Detective Foley's use of inadmissible hearsay material
consisting of testimony regarding another officer[']s Miranda
card violated defendant's right to confrontation, given that the
officers were available to testify."  (ECF No. 12-8 at 13.)
Wilcox further argued that "the trial court erred in permitting
Foley to testify to the use of Officer[] Morales['] Miranda card
to elicit oral statements from defendant without the right to
confront him and Officer DiPalma."  Id. at 14-15.  Wilcox
claimed that the trial judge "should have allowed [Morales] to
testify to rebut Detective Foley's allegation that defendant
wrote those responses."  Id. at 17.  The Appellate Division did
not discuss this ground, stating:  "We briefly touch upon
defendant's pro se points, only to the extent we note that none
raise issues worthy of discussion in a written opinion."
Wilcox, 2012 WL 3116701 at *5.

35

Wilcox appears to argue that counsel was constitutionally deficient in failing to challenge Foley's trial testimony which indicated that Wilcox had acknowledged receiving Miranda warnings from Detective Morales.  This Court notes that, after conducting the suppression hearing, the trial court found that "Mr. Wilcox was given his Miranda warnings over and over and over again, both orally and written, and that he understood his rights and that he knowingly waived his rights."  (ECF No. 12-30 at 29-30.)  The Appellate Division agreed that Wilcox had voluntarily waived his Miranda rights.  This Court finds that the New Jersey courts' adjudication of the claim that counsel was deficient in failing to challenge Foley's testimony was not contrary to, or an unreasonable application of, Supreme Court holdings concerning the Confrontation Clause or the right to the effective assistance of counsel.  See, e.g., Knowles v. Mirzayance, 556 U.S. 111, 127 (2009) ("Counsel also is not required to have a tactical reason -- above and beyond a reasonable appraisal of a claim's dismal prospects for success -- for recommending that a weak claim be dropped altogether.")

D.   Eighth Amendment

In Ground Seven of the § 2254 Petition, Wilcox asserts that his sentence violated the Eighth Amendment.  Wilcox argued on

direct appeal that his 40-year term of imprisonment was excessive and the Appellate Division rejected the claim, finding that "the sentence is not manifestly excessive or unduly punitive and does not constitute an abuse of discretion." (ECF No. 1-2 at 16-17.)

The legality and length of a sentence are generally questions of state law over which this Court has no jurisdiction under § 2254.  See Chapman v. United States, 500 U.S. 453, 465 (1991); Harmelin v. Michigan, 501 U.S. 957, 994-95 (1991); Wainwright v. Goode, 464 U.S. 78 (1983).  Moreover, the Supreme Court held in Lockyer v. Andrade, 538 U.S. 63 (2003), that California's imposition of two consecutive terms of 25 years to life in prison for a third strike conviction for stealing five videotapes did not violate clearly established Supreme Court Eighth Amendment precedent.  In light of Lockyer, the New Jersey courts' adjudication of the Eighth Amendment claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

E.   Certificate of Appealability

Wilcox has not made a substantial showing of the denial of a constitutional right.  Therefore, no certificate of

37

appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B).

<u>See</u> Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

<strong>IV.   CONCLUSION</strong>

This Court dismisses the Petition with prejudice and denies a certificate of appealability.


                                    **s/ Jerome B. Simandle**
                                    JEROME B. SIMANDLE
                                    Chief U.S. District Judge

Dated:  **December 14, 2015**